Deborah B. Baker-Egozi (SBN 266141)
**LIPSCOMB, EISENBERG & BAKER, PL**
2 South Biscayne Boulevard
Penthouse 3800
Miami, Florida 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
Email: dbaker@lebfirm.com

Attorneys for
*MyBusinessLoan.com, LLC*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYBUSINESSLOAN.COM, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FORA FINANCIAL BUSINESS LOANS LLC, FUNDING METRICS LLC, NEW ERA LENDING LLC, RICHMOND CAPITAL GROUP, LLC, and PEARL BETA FUNDING, LLC, <br><br> Defendants. | CASE NO. **'15CV2254 BTM BLM** <br><br> **COMPLAINT** |

Plaintiff, MyBusinessLoan.com, LLC ("Plaintiff" or "Lender"), hereby sues Defendants, Fora Financial Business Loans, LLC ("Fora Financial"), Funding Metrics LLC ("Funding Metrics"), New Era Lending LLC ("New Era Lending"), Richmond Capital Group, LLC ("Richmond Capital"), and Pearl Beta Funding, LLC ("Pearl Beta Funding") (individually, each a "Defendant" and, collectively, "Defendants"), and alleges:

## NATURE OF THE ACTION

1. Lender seeks damages for Defendants' tortious interference with a loan contract entered into between Lender and a third-party borrower, and restitution of Defendants' ill-gotten gains received as result of their interference. Defendants—at all times actually or constructively aware of contractual limitations on such borrower's ability to encumber its assets beyond

1  Lender's loan—willfully and in bad faith entered into additional, subordinate loan contracts with
2  this borrower. These additional loans overleveraged the borrower, leading to its default and
3  impairment of Lender's loan and security interest therein. Defendants, however, benefited from
4  their interference by collecting payments on their loans prior to the borrower's default. This is
5  precisely the situation Lender hoped to avoid when limiting this borrower's ability to further
6  encumber its assets.

7  2.  Accordingly, Lender brings this instant action for: (COUNT I) Tortious
8  Interference with Contractual Relations, and for recovery in (COUNT II) Quasi-Contract Seeking
9  Remedy of Restitution/Imposition of a Constructive Trust, and seeks other compensatory and
10 punitive damages and its attorneys' fees and costs for initiating and prosecuting this action.

**PARTIES**

12  3.  Plaintiff, MyBusinessLoan.com, LLC, is a limited liability company organized and
13 existing under the laws of the state of California with its principal place of business at 1901
14 Camino Vida Roble, Suite 120, Carlsbad, California 92008.

15  4.  Defendant, Fora Financial Business Loans LLC, is a limited liability company
16 organized and existing under the laws of the state of Delaware, with its principal place of business
17 at 242 36th Street, New York, New York 10018.

18  5.  Defendant, Funding Metrics LLC, is a limited liability company organized and
19 existing under the laws of the state of Delaware, with its principal place of business at 884 Town
20 Center Drive, Langhorne, Pennsylvania 19047-1748.

21  6.  Defendant, New Era Lending LLC, is a limited liability company organized and
22 existing under the laws of the state of Delaware, with its principal place of business at 762 North
23 Orange Street, Wilmington, Delaware 19801-1708.

24  7.  Defendant, Richmond Capital Group, LLC, is a limited liability company
25 organized and existing under the laws of the state of New York, with its principal place of
26 business at 125 Maiden Lane, Suite 501, New York, New York 10038-4722.

27
28

8. Defendant, Pearl Beta Funding, LLC, is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business at 40 Exchange Place 301, New York, New York 10005-2701.

9. Upon information and belief, Defendants are financial institutions that provide financing to small business borrowers and are competitors of Lender.

## JURISDICTION

10. This Court has subject matter jurisdiction over the claim set forth herein pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties, and the matter in controversy exceeds $75,000, exclusive of interests and costs.

11. Pursuant to Cal. Civ. Proc. Code § 410.10, this Court has personal jurisdiction over Defendants because Defendants have engaged in continuous and systematic business activity in the state of California and/or have committed tortious acts in this state. Further, the actions giving rise to this action were taken by Defendants at least in part in this state, and Lender is a citizen of this state.

## VENUE

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because: (a) a substantial part of the events or omissions giving rise to the claims occurred in this District; and/or (b) a substantial part of property that is the subject of the action is situated in this District; and/or (c) each Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

13. Lender is in the business of providing loans to small business borrowers.

14. Lender's borrowers use these loans in a variety of ways, including but not limited to, covering daily operating costs, purchasing new inventory, hiring employees, remodeling or renovating, handling unexpected expenses, and financing expansion.

15. In a typical loan transaction, Lender agrees to loan a small business customer a principal amount and the customer agrees to repay Lender the principal amount with interest and costs. The borrowed amount is repaid to Lender over a fixed term usually in

1  installment payments. Lender enters into a set of written loan agreements (the "Loan
2  Agreements") with each customer to which it provides a loan.

3      16.    The terms of the Loan Agreements Lender enters into with its borrowers grant
4  Lender a security interest in certain collateral of such borrowers, which is typically defined as all
5  current and future assets of a borrower, wherever located.

6      17.    In order to protect itself and its borrowers, Lender's Loan Agreements also require
7  that borrowers refrain from taking certain actions that may negatively impact the borrowers'
8  ability to perform their obligations under the Loan Agreements. These restrictions, for example,
9  prohibit borrowers from further encumbering the collateral securing any loan made by Lender.

10     18.    The provisions and restrictions contained in Lender's Loan Agreements are
11 similar to those found in typical financing agreements used in the small business
12 financing industry, of which Lender and Defendants are members.

13     19.    Pursuant to these standard business practices, on or about March 31, 2015, Lender
14 entered into Loan Agreements (the "NDM Loan Agreement") with one of its borrowers, NDM
15 Group, Inc. ("NDM").

16     20.    Pursuant to the terms of the NDM Loan Agreement, Lender agreed to provide a
17 credit line of up to $200,000 to NDM. Repayment of the NDM Loan Agreement was to be
18 made by NDM to Lender through agreed upon installment payments.

19     21.    Also pursuant to the terms of the NDM Loan Agreement, NDM granted Lender a
20 security interest in "[a]ll assets of [NDM], wherever located and whether now existing or owned
21 or hereafter acquired or arising" (the "Collateral").

22     22.    NDM agreed under the NDM Loan Agreement not to further encumber the
23 Collateral. This restriction prohibited NDM from incurring additional debt which would impair
24 Lender's Collateral and was specifically intended to protect Lender's security interest in the
25 Collateral.

26     23.    On April 3, 2015, CT Lien Solutions, on behalf of Lender, filed a UCC
27 Financing Statement with the Florida Secretary of State that evidenced the security interest of
28

1  Lender in the Collateral (the "NDM UCC-1"). A true and correct copy of the NDM UCC-1 is
2  attached hereto as Exhibit "A."

3      24.    In addition to listing the Collateral in which Lender had been granted a security
4  interest, the NDM UCC-1 also contained the following notice to third parties: "Debtor has
5  agreed not to further encumber the Collateral described herein."

6      25.    On or about June 9, 2015, in contravention of the NDM Loan Agreement, NDM
7  received additional business financing from Fora Financial, which was wired into NDM's bank
8  account. Following the deposit of these additional funds, Fora Financial began debiting amounts
9  on a periodic basis from NDM's bank account to service this additional financing.

10      26.    On or about June 17, 2015, in contravention of the NDM Loan Agreement, NDM
11  received additional business financing from Funding Metrics, which was wired into NDM's bank
12  account. Following the deposit of these additional funds, Funding Metrics began debiting
13  amounts on a periodic basis from NDM's bank account to service this additional financing.

14      27.    On or about June 24, 2015, in contravention of the NDM Loan Agreement, NDM
15  received additional business financing from New Era Lending, which was wired into NDM's
16  bank account. Following the deposit of these additional funds, New Era Lending began debiting
17  amounts on a periodic basis from NDM's bank account to service this additional financing.

18      28.    On or about June 30, 2015, in contravention of the NDM Loan Agreement, NDM
19  received additional business financing from Richmond Capital, which was wired into NDM's
20  bank account. Following the deposit of these additional funds, Richmond Capital began debiting
21  amounts on a periodic basis from NDM's bank account to service this additional financing.

22      29.    On or about July 24, 2015, in contravention of the NDM Loan Agreement, NDM
23  received additional business financing from Pearl Beta Funding, which was wired into NDM's
24  bank account. Following the deposit of these additional funds, Pearl Beta Funding began debiting
25  amounts on a periodic basis from NDM's bank account to service this additional financing.

26      30.    Each of the Defendants took a security interest in the Collateral for their respective
27  loans. NDM's further encumbrances of the Collateral are evidenced by UCC Financing
28  Statements filed by Fora Financial, Funding Metrics, New Era Lending, Richmond Capital, and

1  Pearl Beta Funding, which are attached hereto as Exhibits "B," "C," "D," "E," and "F,"
2  respectively.

3      31.    As a direct result of NDM paying Defendants, NDM was unable to make its
4  required payments to Lender and defaulted under the terms of the NDM Loan Agreement.

5      32.    As of the date of this Complaint, $200,237.45 remains due and outstanding to
6  Lender under the NDM Loan Agreement.

7      33.    By causing NDM to breach the NDM Loan Agreement or otherwise rendering it
8  impossible for NDM to perform under the NDM Loan Agreement, Defendants damaged Lender
9  by causing NDM to be unable to repay the amount it borrowed from Lender and to default under
10 the NDM Loan Agreement.

11     34.    Further, Defendants have been unjustly enriched at the expense of Lender by
12 receiving funds rightfully due Lender pursuant to the terms of the NDM Loan Agreement.

13     35.    Prior to the making of Defendants' loans to NDM, Defendants knew or had
14 constructive knowledge of Lender's loan to NDM.

15     36.    It is normal and customary in the financing industry for lenders such as Defendants
16 to conduct a lien search as part of their due diligence prior to committing funds. Each of the
17 Defendants would have conducted such a lien search prior to extending NDM financing. Any
18 such lien search would have revealed to the Defendants the existence of the NDM UCC-1.

19     37.    Accordingly, each of the Defendants knew of, or had constructive knowledge of,
20 the restrictions contained in the NDM Loan Agreement as set forth on the NDM UCC-1, which
21 clearly established that NDM had "agreed not to further encumber the Collateral" securing
22 Lender's loan to NDM.

23     38.    Despite their knowledge of the NDM Loan Agreement and the restriction
24 prohibiting NDM from further encumbering Lender's Collateral, Defendants entered into
25 additional financing agreements with NDM thereby causing NDM to breach is agreement with
26 Lender.

27     39.    Lender has been forced to initiate the instant action seeking damages for
28 Defendant's tortious interference with the NDM Loan Agreement, and for restitution and/or the

1  imposition of a constructive trust on funds rightfully belonging to Lender pursuant to the NDM
2  Loan Agreement.
3      40.    All conditions precedent to the filing of this action has occurred, have been
4  performed, or have otherwise been waived or excused.
5
6      41.    Lender has retained the undersigned counsel and is obligated to pay said counsel a
7  reasonable fee for their services.

### COUNT I: TORTIOUS INTERFERENCE
### WITH CONTRACTUAL RELATIONS
### (Against All Defendants)

42.    The allegations contained in paragraphs 1 through 41 are hereby re-alleged as if fully set forth herein.

43.    A valid contract in the form of the NDM Loan Agreement existed between Lender and NDM.

44.    From at least April 3, 2015, Defendants knew or had constructive knowledge of the restrictions contained in the NDM Loan Agreement and NDM UCC-1, which clearly established that NDM had "agreed not to further encumber the Collateral" given for the loan from Lender to NDM.

45.    Defendants intended to induce a breach or disruption of the contractual relationship existing between Lender and NDM.

46.    Defendants knew that interference with Lender's contractual relationship was certain or substantially certain to occur as a result of their actions.

47.    An actual breach or disruption of Lender's contractual relationship with NDM has occurred.

48.    Defendants' interference has caused Lender to suffer damages in an amount in excess of the Court's jurisdictional threshold, and to be established by appropriate proof at trial.

49.    Defendants acted with malice, fraud or oppression when Defendants, intentionally and in conscious disregard of Lender's rights, deliberately induced NDM to breach the NDM

Loan Agreement and deprived Lender of its rightful proceeds from such agreement. Accordingly, Lender is entitled to an award of punitive damages against Defendants in an amount to be established by appropriate proof at trial.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter final judgment against Defendants, and each of them, as follows:

(A)  For damages according to proof at time of trial;

(B)  For prejudgment interest;

(C)  For attorneys' fees and costs of suit;

(D)  For punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar misconduct; and

(E)  For such other and further relief as the Court deems just and proper.

### COUNT II: QUASI-CONTRACT CLAIM SEEKING RESTITUTION / IMPOSITION OF A CONSTRUCTIVE TRUST) (Against All Defendant)

50.  The allegations contained in paragraphs 1 through 49 are hereby re-alleged as if fully set forth herein.

51.  Defendants induced a breach or disruption of the contractual relationship existing between Lender and NDM, through which Defendants were conferred benefits in the form of payments on loans that were contractually barred.

52.  Under the circumstances, it would be unjust to allow Defendants to retain those benefits without paying Lender for them, in full.

53.  By engaging in the wrongful conduct described above, Defendants have been unjustly enriched at the expense of Lender, and they are required, in equity and good conscience, to disgorge and pay their ill-gotten gains to Lender.

54.  Defendants have gained benefits rightfully belonging to Lender through their wrongful acts, and as such are involuntary trustees of the benefits gained, for the benefit of Lender which would otherwise have had them.

55. Defendants acted with malice, fraud or oppression when Defendants, intentionally and in conscious disregard of Lender's rights, deliberately engaged in the wrongful conduct described above through which they were unjustly enriched and deprived Lender of its rightful proceeds from its agreement with NDM. Accordingly, Lender is entitled to an award of punitive damages against Defendants in an amount to be established by appropriate proof at trial.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter final judgment against Defendants, and each of them, as follows:

(A) For damages for breach of a quasi-contract, according to proof at time of trial;

(B) For an accounting of Defendants' ill-gotten gains;

(C) For restitution in equity, in the form of disgorgement of Defendants' ill-gotten gains, and/or imposition of a constructive trust or equitable lien upon funds or other property identified as belonging in good conscience to Lender that can be traced to particular funds or other property in Defendants' possession, custody, or control;

(D) For prejudgment interest;

(E) For attorneys' fees and costs of suit;

(F) For punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar misconduct; and

(G) For such other and further relief as the Court deems just and proper.

Dated: September 30, 2015

LIPSCOMB, EISENBERG & BAKER, PL

*/s/Deborah B. Baker-Egozi*
Deborah B. Baker-Egozi
Email: dbaker@lebfirm.com
2 South Biscayne Boulevard
Penthouse 3800
Miami, Florida 33131
Phone No. (786) 431- 2228
Fax No. (786) 431-2229
Attorneys for *MyBusinessLoan.com, LLC*

FLORIDA SECURED TRANSACTION REGISTRY

# FILED
## 2015 Apr 03 AM 11:00

**** 201503395071 ****

***C * 04031569427401-38.00***38.00***

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282  Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 25740 - Dealstruck, Inc.

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

47415773

FLFL

File with: Department of State, FL

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| NDM GROUP INC | | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1212 E WHITING STREET, STE. 205 | TAMPA | FL | 33602 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| MAZHAR | NAUMAN | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1212 E WHITING STREET, STE. 205 | TAMPA | FL | 33602 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MYBUSINESSLOAN.COM, LLC | | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1901 CAMINO VIDA ROBLE, SUITE 120 | CARLSBAD | CA | 92008 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, wherever located and whether now existing or owned or hereafter acquired or arising.

Debtor has agreed not to further encumber the Collateral described herein.

☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22.F.S. have been paid

☐ Florida documentary stamp tax is not required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
47415773    MBL

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

**EXHIBIT "A"**